IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| GABRIEL U. VAUGHN,<br><br>    Plaintiff<br><br> VS.<br><br>JAMES DONALD, *et al.*,<br><br>    Defendants | NO. 5:05-CV-11 (CWH)<br><br>PROCEEDINGS UNDER 42 U.S.C. § 1983<br>BEFORE THE U. S. MAGISTRATE JUDGE |

# RECOMMENDATION

  Plaintiff GABRIEL U. VAUGHN is an inmate in the custody of the State of Georgia. He has sued defendants JAMES DONALD, COMMISSIONER, WENDY THOMPSON, WARDEN, DAVID. L. FRAZIER, and DR. JOHN N. TRIPP alleging that the defendants violated his constitutional rights while he was incarcerated at Rivers State Prison in Hardwick, Georgia. Plaintiff states that he has received constitutionally deficient medical care for his serious medical needs. Plaintiff alleges that he suffers from joint pain, pain in his limbs, muscle soreness, nausea, sore lymph nodes in his groin and neck, spinal discomfort, headaches, soreness around the heart area, runny nose, splotchy hair loss, loss of muscle mass, and bumps on the genital area and body. Additionally, plaintiff complains that defendant Tripp failed to properly examine and diagnose his medical condition.

  Before the court is the defendants' **MOTION FOR SUMMARY JUDGMENT**. Tab #17. The motion is supported by a brief, affidavits, and medical records. The court advised the plaintiff of said motion and his duty to respond properly thereto.[1] Tabs #19 and #30, and #44. The plaintiff has filed a response to the defendants' motion.[2] Tabs #29 and #35-39. In entering this order, the undersigned has carefully considered the defendants' motion and all attachments thereto, as well as the plaintiff's responses.

---

[1] After plaintiff had been advised to respond to the defendants' Motion For Summary Judgment, it came to the attention of the undersigned that the defendants had not filed a Statement Of Material Facts Not In Dispute. The defendants then filed said document with the court and plaintiff was afforded until April 1, 2005, to file an additional response. Tab #44. Plaintiff did file a response to the defendants' Statement Of Material Facts Not In Dispute.

[2] In his response to the defendants' motion, plaintiff states that he is filing a Motion For Summary Judgment. Tab #35. However, a review of this document shows that it is merely a response to the defendants' motion and not a Motion For Summary Judgment.

## LEGAL STANDARDS
### A. Summary Judgment

Rule 56 of the *Federal Rules of Civil Procedure* dealing with motions for summary judgment provides as follows:

> The motion shall be served at least 10 days before the time fixed for the hearing. The adverse party prior to the day of hearing may serve opposing affidavits. The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages.

Summary judgment can only be granted if there are no genuine issues of material fact and if the moving party is entitled to judgment as a matter of law. *Fed.R.Civ.P. 56(c); Warrior Tombigbee Transportation Co. v. M/V Nan Fung*, 695 F.2d 1294, 1296 (11th Cir. 1983). While the evidence and all factual inferences therefrom must be viewed by the court in the light most favorable to the party opposing the motion, the party opposing the granting of the motion for summary judgment cannot rest on his pleadings to present an issue of fact but must make a response to the motion by filing affidavits, depositions, or otherwise in order to persuade the court that there are material facts present in the case which must be presented to a jury for resolution. *See Van T. Junkins & Assoc. v. U.S. Industries, Inc.*, 736 F.2d 656, 658 (11th Cir. 1984).

Specifically, the party seeking summary judgment bears the initial burden to demonstrate to the court the basis for its motion by identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions which it believes show that there is an absence of any genuine issue of material fact. *Hairston v. The Gainesville Sun Publishing Co.*, 9 F.3d 913 (11th Cir.1998). In determining whether the moving party has met this burden, the court must review the evidence and all factual inferences drawn from this, in the light most favorable to the non-moving party. *Welch v. Celotex Corp.*, 951 F.2d 1235, 1237 (11th Cir. 1992).

If the moving party successfully meets this burden, the burden then shifts to the non-moving party to establish by going beyond the pleadings, that there are genuine issues of material fact to be resolved by a fact-finder. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). Genuine issues are those as to which the evidence is such that a reasonable jury could find for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).[3]

## DISCUSSION
### 1. Defendants Donald, Thompson, and Frazier

It is readily apparent to the undersigned that plaintiff is attempting to invoke liability against defendants Donald, Thompson, and Frazier based upon the theory of *respondeat superior*. In a properly pled complaint under 42 U.S.C. §1983, a plaintiff must allege that any defendant charged with violating his constitutional rights was either personally involved in violating those rights or that the act or acts complained of was carried out pursuant to an official policy or custom promulgated by the named defendant. *Monell v. New York City Department of Social Services*, 436 U.S. 658, 691-92 (1978).

In the case at bar, plaintiff VAUGHN fails to allege any causative link between defendants Donald, Thompson, and Frazier and the denial of his constitutional rights; that is, he is seeking to impose liability upon these defendants because of their respective positions as Commissioner of the Department of Corrections, Warden of Rivers State Prison, and Deputy Warden of Security. Nor does the plaintiff contend that these defendants were responsible for any policy designed to deny plaintiff his constitutional rights. Instead, it appears that plaintiff predicates his claims against these defendants solely upon the theory of *respondeat superior*. Such is not permitted under the law. *See Fundiller v. City of Cooper City*, 777 F.2d 1436, 1443 (11th Cir. 1985); *see also Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir. 1986). Therefore, defendants Donald, Thompson, and Frazier are entitled to summary judgment.

---

[3] *See also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (the purpose of summary judgment is to pierce the pleadings and assess the proof in order to see whether there is a genuine need for trial); *Brown v. City of Clewiston*, 848 F.2d 1534, 1543 (11th Cir. 1988) (the question is whether the record as a whole could lead a rational trier of fact to find for the nonmovant).

## 2. Deliberate Indifference

In *Estelle v. Gamble*, the Supreme Court held that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' . . . proscribed by the Eighth Amendment." 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251, rehearing denied 429 U.S. 1066, 97 S.Ct. 798, 50 L.Ed.2d 785 (1976). However, the course of treatment is "a classic example of a matter for medical judgment." *Estelle*, 429 U.S. at 107.[4] A mere disagreement between a prisoner and prison officials as to diagnosis or treatment does not give rise to a constitutional violation. *Id*. at 106.

Delay in access to medical attention can violate the Eighth Amendment when it is tantamount to unnecessary and wanton infliction of pain. Cases stating a constitutional claim for immediate or emergency medical attention have concerned medical needs that are obvious even to lay persons because they involve life-threatening conditions or situations where it is apparent that delay would detrimentally exacerbate the medical problem. In contrast, delay or even denial of medical treatment for superficial, nonserious physical conditions does not violate the Eighth Amendment. The seriousness of an inmate's medical needs may be decided by reference to the effect of the delay in treatment.

---

[4]At most, a mere allegation of improper or untimely treatment, without more, states a claim of medical malpractice cognizable under state law. *Id. See also Howell v. Evans*, 922 F.2d 712, 719 (11th Cir. 1991) (vacated pursuant to settlement, 931 F.2d 711 (11th Cir. 1991), reinstated by unpublished order (June 24, 1991), cited in *Howell v. Burden*, 12 F.3d 190, 191 n.* (11th Cir. 1994)). Moreover, *Estelle* specifically states that the question of whether an x-ray or additional diagnostic techniques or forms of treatment are indicated are classic examples of matters for medical judgment and that medical malpractice does not become a constitutional violation merely because the patient is a prisoner. 97 S.Ct. at 292-93.

Where the delay results in an inmate's suffering a life-long handicap or permanent loss, the medical need is considered serious. An inmate who complains that delay in medical treatment rose to a constitutional violation must place <u>verifying medical evidence in the record</u> to establish the detrimental effect of delay in medical treatment to succeed. Further, the tolerable length of the delay in providing medical attention depends on the nature of the medical need and the reason for the delay. Consequently, delay in medical treatment must be interpreted in the context of the seriousness of the medical need, deciding whether the delay worsened the medical condition, and considering the reason for the delay. *Hill v. Dekalb R.Y.D.C.*, 40 F.3d 1176, (11th Cir.1994) (emphasis added).

In support of their motion for summary judgment, the defendants have submitted the plaintiff's medical records and the affidavit of defendant Tripp. The medical records and affidavit indicate that defendant Tripp was not deliberately indifferent to plaintiff's serious medical needs.

Plaintiff arrived at Rivers State Prison (RSP) on July 1, 2004. He had no complaints during intake but was concerned about the results of his recent Hepatitis test which had come back negative. Tab #17, Exhibit B, Attachment 1.

Plaintiff was seen by Nurse Smith at sick call on August 30, 2004, for complaints of shooting pains in his hands and legs. He stated that he had a history of Lyme disease and that Ibuprofen helped with the pain. Plaintiff was given Ibuprofen and an appointment was set up with defendant Tripp. *Id*.

Defendant Tripp examined plaintiff on September 7, 2004. In addition to the above complaints, plaintiff also stated that he was having stomach problems. Defendant Tripp ordered blood work, placed him on Zantac, and gave him a no work profile for two weeks. *Id*.

Plaintiff returned to medical two days later complaining of cold symptoms. He was given cold medicine, Motrin, and cough syrup. *Id*.

Plaintiff was next seen at medical on September 16, 2004, with continued complaints of cold symptoms. He was prescribed Bactrim, cough syrup, and cold medicine. *Id*.

Defendant Tripp saw plaintiff for a follow-up visit on September 20, 2004. At this visit, plaintiff stated that he was suffering from nausea and joint pain. He also stated that he felt as if he had the flu and asked that he be excused from running the buffer. Defendant Tripp prescribed Amoxicillin and Motrin and issued a no buffing profile. Additional lab work was ordered as the previous lab work had come back negative. A follow-up visit was scheduled for two months. *Id*.

A week later, plaintiff was seen by the nurse at sick call. He complained of being sick to his stomach, but his main complaint was that he wanted to be excused from working in the shower. An examination was normal and an appointment with defendant Tripp was scheduled to assess plaintiff's work capabilities. *Id*.

Plaintiff returned to Medical on October 6, 2004. Based on his complaints, defendant Tripp ordered an HIV test, syphilis test, a thyroid function test, a chest x-ray, and a film of his abdomen. Dr. Tripp also ordered that plaintiff be medically unassigned for thirty (30) days which was extended for an additional 30 days on November 16, 2004, when plaintiff's Zantac prescription was refilled. *Id*.

On November 3, 2004, plaintiff was seen by a nurse for complaints of ear pain. At this visit, plaintiff stated that he had previously had a sperm disorder caused by a bacterial infection and that his present symptoms were mimicking those. A physical examination showed that he had some drainage from his penis and effusion in his left ear. Otherwise, the examination was normal. Amoxicillin and Motrin were prescribed and a consultation with a urologist was requested. A follow-up appointment was also scheduled for three weeks. *Id*.

Plaintiff was seen at his follow-up appointment on November 23, 2004, where he stated that his pain was no better. Plaintiff's Motrin was renewed and it was noted that the Urology appointment was approved and pending. *Id*.

Plaintiff was supposed to be seen by defendant Tripp on December 8, 2004, for complaints of joint pain and his lab work follow-up. However, plaintiff refused the appointment.

On December 28, 2004, plaintiff was seen by a Urologist. The next day, a nurse discussed the negative findings with him. *Id*., at Attachment 2.

Plaintiff went to medical on January 7, 2005, for complaints that he had pain all over his body and that his lymph nodes were swollen. Physical examination was normal, but plaintiff was very anxious and rambled while speaking. Plaintiff was given a Torodol injection for pain and a mental health social worker was consulted. *Id*.

Plaintiff returned to medical three days later for continued complaints of pain in his lymph nodes. Additionally, he was complaining of sharp pain in his legs and spine and continual headaches and nausea. A doctor's appointment was set up for plaintiff even though the physical examination was normal. *Id*.

Plaintiff was seen by defendant Tripp on January 19, 2005, for his various complaints. Defendant Tripp was unable to determine plaintiff's chief complaint, but did note that various tests had been ordered. After reviewing plaintiff's file, defendant Tripp felt that some of plaintiff's problems might be mental health related. When this possibility was discussed with him, plaintiff became verbally abusive and refused to be examined. Dr. Tripp then referred plaintiff to mental health to rule out the possibility of a psycho-physiological or withdrawal or drug use or other psychological cause for his complaints. *Id*.

On February 5, 2005, plaintiff was seen in medical by a nurse for complaints of sores and an infection on his penis, nausea, vomiting, and athletes foot. Physical examination was normal and no lesions were noted. Plaintiff was prescribed Phenegren for nausea and anti-fungal cream for athletes foot. He also advised to return to medical if the lesions reappeared. *Id*.

Defendant Tripp next saw plaintiff on February 10, 2005, for complaints of joint pain in his spine, arms, and legs that radiated into his fingers and toes. Plaintiff also complained of nausea, swollen lymph nodes in his neck and groin, and frequent headaches and earaches. Physical examination was normal and plaintiff was noted to be alert and oriented, to have a full range of motion, no masses, no tenderness in the abdomen, and hearing and breathing was normal. Defendant Tripp then ordered a blood test, urinalysis, thyroid test, metabolic and lipid profiles, and x-rays of the hand and chest. *Id*.

In response to the defendants' motion, the plaintiff has submitted nothing of substance to adequately rebut the defendants' showing that he was provided with constitutionally adequate medical care; i.e., plaintiff has failed to submit any medical evidence to support his contention that his treatments and medications fell below applicable medical standards and constitutionally adequate standards of care. The record is replete with evidence that treatment has been properly afforded to plaintiff on numerous occasions.

In short, plaintiff has failed to establish deliberate indifference on the part of the defendants to his medical needs, serious or otherwise. He simply disagrees with the defendants' treatment for his numerous medical complaints. Therefore, defendant Tripp is entitled to summary Judgment.

Accordingly, IT IS RECOMMENDED that the defendants' MOTION FOR SUMMARY JUDGMENT (Tab #33) be **GRANTED**. Pursuant to 28 U.S.C. §636(b)(1), the parties may serve and file written objections to this RECOMMENDATION with the district judge to whom this case is assigned, **WITHIN TEN (10) DAYS** after being served with a copy thereof.

SO RECOMMENDED, this 29th day of APRIL, 2005.



CLAUDE W. HICKS, JR.
UNITED STATES MAGISTRATE JUDGE